**Opinion filed July 23, 2026**



## In The

# Eleventh Court of Appeals

_____

## No. 11-25-00008-CR

_____

## DENVER MOORE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 361st District Court**

**Brazos County, Texas**

**Trial Court Cause No. 22-03468-CRF-361**

## M E M O R A N D U M   O P I N I O N

Following a jury trial, Appellant, Denver Moore, was convicted of the third-degree felony offense of possession of a controlled substance, methamphetamine, in an amount of one gram or more but less than four grams.[1]  *See* TEX. HEALTH &

---

[1]This appeal was transferred to this court from the Tenth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West Supp. 2025).

SAFETY CODE ANN. § 481.115(c) (West Supp. 2025). The jury found two felony enhancement allegations to be true and assessed his punishment at thirty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justic. The trial court sentenced Appellant accordingly. In two issues on appeal, Appellant contends that the trial court erred by granting his request to represent himself at trial and argues that his trial attorneys rendered ineffective assistance by failing to request a competency evaluation. We affirm.

## I. *Factual and Procedural History*

On September 1, 2022, Appellant was indicted for the offense. In the two-year period prior to trial, three different attorneys were appointed to represent Appellant. With each attorney, Appellant repeatedly attempted to file pro se motions and various documents. Appellant's first trial attorney withdrew after Appellant "expressed [that] he no longer [had] confidence" in him and had referred the attorney to the State Bar. Shortly after the trial court appointed a second attorney, Appellant filed a pro se motion asserting a claim for ineffective assistance of counsel. Other pro se filings, including a federal civil rights complaint naming Appellant's first and second appointed attorneys as defendants, followed.

At a final pretrial hearing on May 28, 2024, Appellant notified the trial court that he wished to proceed pro se. The trial court admonished Appellant regarding the charge against him and the applicable range of punishment, and Appellant answered affirmatively when asked if he understood. Appellant testified that he was of "majority age" and "competent of mind." Although he had not graduated from high school, Appellant confirmed that he could read and write. The trial court then strongly cautioned Appellant against self-representation, and Appellant was provided with a written copy of *Faretta* warnings. *See Faretta v. California*, 422 U.S. 806, 835 (1975). Appellant tendered a signed copy of the *Faretta* warnings

2

back to the trial court. At the conclusion of the hearing, the trial court granted Appellant's request, stating:

> [Appellant], I do find that you are of sufficient age, background, and education to understand the implications and the dangers -- and I'll reiterate the dangers -- of self-representation; however, I do find that you have been informed of the nature of the offense charged and the possible penalty if you are convicted of the offense, that there are technical rules of evidence and procedure with which you'll be obligated to comply, that you will not be given special consideration because of your lack of legal training or experience. You will not obstruct the orderly procedure in the courts and interfere with the fair administration of justice. You have no right to standby counsel. I do approve your motion to waive counsel. It's granted. Your motion to proceed pro se is granted.

At a status hearing three days later Appellant introduced himself as "authorized representative of Denver Moore," identifying himself as "a beneficiary" before the court. The trial court verified that the person appearing before it was Appellant, who had received the *Faretta* warnings. Appellant replied: "I'm not him. The person that you call Denver Moore, that's not me." Appellant then referred to the court as "Administrator trustee under constructive trust 22-03468" and requested that the court "dissolve this constructive trust" against him. The following exchange ensued:

> THE COURT: Okay. I hear what you're saying. I don't believe any of what you just said to be relevant in this case. This is a criminal proceeding where the State of Texas has received an indictment -- hold on. I let you finish, let me finish -- received an indictment that was presented by the grand jury. They are now by their duty bound to go forward with that indictment and I do not believe this case to be related to any trust whatsoever.
>
> [APPELLANT]: So you saying this is a criminal offense?
>
> THE COURT: Correct.

3

[APPELLANT]: So there's an injured party. Please state your claim against me.

THE COURT: I gave a copy of the indictment, sir.

[APPELLANT]: Would the injured parties please step forward and state their claim, man or woman.

Appellant then complained that the prosecutor from the final pretrial hearing was not present to prosecute the case and that another prosecutor appeared on behalf of the State, and he refused to sign a document confirming his receipt of discovery. After the trial court ensured that Appellant had received discovery, it recessed the hearing. The trial court subsequently signed an order appointing a third attorney to represent Appellant.

Over the next five months, Appellant continued filing pro se motions and letters. Then, on the morning of trial, the parties approached the bench outside the venire panel's presence, and Appellant's third appointed attorney informed the trial court that Appellant had asked him to withdraw from the case. The trial court, again, admonished Appellant regarding the charge against him and the applicable punishment range and administered the *Faretta* warnings. The trial court explained that Appellant did not have a right to hybrid representation, to which Appellant replied, "I'm reserving all my rights under UCC 1-308, which is commercial law and common law, reserving my rights. So, therefore, it is my right under the constitution to have counsel, me, or both represent myself." Appellant then claimed that he did not understand the *Faretta* warnings, and the trial court informed him that, under those circumstances, the case would proceed with his court-appointed trial attorney.

As the trial court attempted to address remaining pretrial matters, Appellant repeatedly refused to proceed if the trial attorney represented him. The trial court cautioned Appellant that his continued disruption would result in his removal from

4

the courtroom. To this, Appellant replied: "Then you're going to have to remove me because I'm not giving you permission or authority to proceed."

The venire panel was seated and sworn with Appellant seated beside his trial attorney. When the trial court introduced defense counsel, Appellant objected, which was disregarded by the trial court. Appellant continued to interject objections throughout the State's voir dire despite still being represented by an attorney. At the conclusion of the State's voir dire, Appellant requested a bench conference and reiterated that he was not "giving [his counsel] authorization to represent" him at trial and requested to represent himself. The trial court asked Appellant if he understood the nature of the offense charged, to which Appellant replied, "No. What is it?" When informed that he would not be permitted to represent himself if he did not understand the charge, Appellant equivocated, stating he understood what he was charged with, the possible punishment, and agreed to comply with all the technical rules of evidence and procedure. The trial court granted Appellant's motion to waive counsel, but Appellant's court-appointed trial attorney remained present for proceedings.

Appellant thereafter conducted his own voir dire, wherein he acknowledged he had "violated a statute," but expressed a desire to "plead [his] case and testify to the truth to the best of [his] ability" in hopes that the jury would "understand where [he was] coming from." Appellant stated that he believed the legal definition of a "person" is "a corporation, association, partnership," and therefore did not apply to him because he refused to be "categorized as a legal fictional entity." Appellant further stated that while he understood "the legality of these things," he was refusing to "consent to them." After the indictment was read, Appellant stated, "I will plead guilty to the facts of the case, but not the crime." The trial court construed Appellant's statement as a plea of "not guilty."

The State called two witnesses during the guilt-innocence phase of trial: Officer Lonnie Pace with the College Station Police Department, who was the arresting officer, and Erin Bruner, a forensic analyst with the Texas Department of Public Safety. Officer Pace testified that he observed Appellant attempt to drive down a dead-end non-residential street to avoid his patrol vehicle and noticed that Appellant was not wearing a seatbelt and was operating a vehicle without a registration sticker. Officer Pace testified that he effectuated a traffic stop and made contact with Appellant, who was the only occupant in the vehicle. Officer Pace testified that Appellant was uncooperative, refused to answer any questions, and "kept reaching down" and "putting his hands down either in his lap [or] under his seat" notwithstanding Officer Pace's commands to keep them within sight, which is an "officer safety issue." Officer Pace testified that, when Appellant raised his hands, he observed a clear plastic baggy in Appellant's left hand and could see "shards like a crystal-like substance on his left sleeve," which appeared to be consistent with methamphetamine. Officer Pace asked Appellant to exit the vehicle when a backup officer arrived.

After Appellant exited the vehicle, Officer Pace observed a green glass pipe in the driver's-side door pocket, a "couple of baggies" underneath the seat, and a crystal-like substance that he believed to be methamphetamine "on the floorboard of the vehicle, driver's seat, [and] on the driver door itself." Appellant was arrested for possession of a controlled substance. Pace testified that he also discovered a bottle of synthetic urine in the center console of the vehicle, which he opined was commonly used to falsify drug tests. Bruner confirmed that the substance recovered from Appellant's vehicle was methamphetamine with a net weight of 1.64 grams.

Appellant cross-examined each witness and introduced several exhibits into evidence. During his case-in-chief, Appellant testified that he had "made a mistake," but the State's offer had been "unreasonable for any human being." On cross-

examination, Appellant admitted that he had previously been convicted of the felony offense of injury to a child but denied that he had been in possession of methamphetamine the evening of his arrest in the instant offense. The jury returned a guilty verdict.

## II. *The Right to Self-Representation*

In his first issue, Appellant contends that the trial court erroneously permitted Appellant to represent himself at trial.

### A. *Standard of Review and Applicable Law*

Every criminal defendant has the constitutional right to the assistance of counsel and the reciprocal constitutional right to self-representation. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The right to self-representation is separate from the right to assistance of counsel, and to choose one is to forego the other. *Osorio-Lopez v. State*, 663 S.W.3d 750, 756 (Tex. Crim. App. 2022) (citing *United States v. Purnett*, 910 F.2d 51, 54 (2d Cir. 1990)). But, to proceed pro se, a defendant must knowingly, intelligently, and voluntarily waive his right to counsel, and clearly and unequivocally assert his right to self-representation. *Id.* (citing *Faretta*, 422 U.S. at 835).

A knowing and intelligent waiver requires a showing that the defendant was warned of the "dangers and disadvantages of self-representation," and "his choice [was] made with eyes open." *Faretta*, 422 U.S. at 835; *Osorio-Lopez*, 663 S.W.3d at 756. Whether the waiver of the right to assistance of counsel was effective depends on the totality of the circumstances, including the consideration of a defendant's background, experience, and conduct. *Osorio-Lopez*, 663 S.W.3d at 756. However, inquiries concerning a defendant's age, education, background, or previous mental health history are not mandatory in every instance. *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984).

A defendant must be competent to choose and invoke his right to self-representation before he can knowingly and intelligently waive his right to the assistance of counsel and represent himself. *Osorio-Lopez*, 663 S.W.3d at 757 (citing *Godinez v. Moran*, 509 U.S. 389, 399–400 (1993)). The competency to effectively waive the right to counsel is the same as the standard for determining one's competency to stand trial, which requires a defendant to have: (1) the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding"; and (2) "a rational as well as factual understanding of the proceedings against him." *Chadwick v. State*, 309 S.W.3d 558, 560 (Tex. Crim. App. 2010); *see also Indiana v. Edwards*, 554 U.S. 164, 170, (2008). "[A] defendant need not have the skill and experience of a lawyer 'to competently and intelligently choose self-representation.'" *Osorio-Lopez*, 663 S.W.3d at 757 (quoting *Faretta*, 422 U.S. at 835). In this regard, the focus is not whether the defendant is competent to represent himself at trial; rather, it is whether he is competent to effectively *choose* to do so. *Id.* (citing *Godinez*, 509 U.S. at 400–01).

The trial court is in the best position to determine if the defendant is competent to proceed pro se. *See Chadwick*, 309 S.W.3d at 562–63. We thus review the trial court's ruling on the defendant's request for self-representation for an abuse of discretion. *Id.* at 563. Because one's competency to choose self-representation is a mixed question of law and fact that turns on an evaluation of credibility and demeanor, we afford almost total deference to the trial court's ruling. *Id.* at 561. In doing so, we view the evidence in the light most favorable to the trial court's ruling and imply any findings of fact that are necessary to support its ruling, provided they are supported by the record. *Id.*

B. *Analysis*

On appeal, Appellant contends that his disruptive behavior in the courtroom, "inability to process even basic principles," coupled with his "apparent belief that he

8

had a civil remedy available," demonstrates that he lacked the capacity to knowingly and intelligently choose self-representation, and that the trial court abused its discretion in permitting him to do so. We disagree.

Many of Appellant's statements reflect familiar "sovereign citizen" rhetoric, a philosophy that challenges courtrooms across the country. *Royal v. State*, 703 S.W.3d 895, 913 (Tex. App.—Eastland 2024, pet. ref'd) (quoting *Jemerson v. State*, No. 02-23-00036-CR, 2023 WL 6889947, at *5 n.6 (Tex. App.—Fort Worth Oct. 19, 2023, pet. ref'd) (mem. op., not designated for publication) (collecting cases)). Although the precise contours of sovereign-citizen beliefs vary, such arguments generally reflect a conscious rejection of legal authority rather than an inability to comprehend it. *Id.* at 913–14 (noting that sovereign-citizen commentary often includes inaccurate case law quotes, self-serving readings and interpretations of the United States Constitution, and proffered definitions from outdated legal dictionaries). As we observed in *Royal*, sovereign-citizen rhetoric portrays an awareness of the law, one's constitutional rights, and a broad understanding of the criminal justice system, while in concert with conscious disobedience. *Id.* at 914. However misinformed, sovereign citizens nevertheless grasp the nature of legal proceedings, and then knowingly defy them. *Id.* It is the ideology's inherent opposition to authority and defiant-by-design subversion of the legal process that belies post-conviction assertions of incompetency. *Id.* Accordingly, a defendant's espousal of sovereign-citizen beliefs does not, standing alone, indicate an inability to knowingly and voluntarily waive counsel. *See id.*; *see also United States v. Jonassen*, 759 F.3d 653, 660 (7th Cir. 2014) (concluding that a sovereign citizen was competent to stand trial and, by extension, able to represent himself).

Here, the record reflects that Appellant repeatedly sought to represent himself. Appellant was appointed three different attorneys prior to trial, and despite having representation, he filed multiple pro se documents with the trial court. After his first

attorney withdrew and Appellant was appointed a second attorney, Appellant explicitly made it known to the trial court that he wished to proceed pro se. The trial court thoroughly admonished Appellant regarding the nature of the charge, range of punishment, and the dangers of self-representation. Appellant confirmed that he understood and persisted in his request to represent himself. The trial court thereafter made oral and written findings affirming that Appellant understood the implications associated with self-representation and granted Appellant's request.

Three days later at a status hearing, Appellant engaged in argumentative, legally irrelevant rhetoric, and the trial court subsequently appointed a third attorney to Appellant's case. Within the five months that followed, Appellant continued to file pro se motions and letters addressed to his trial attorney and the trial court. Then, in a motion dated approximately two weeks before trial but filed the day after trial began, Appellant filed a motion for ineffective assistance of counsel, stating that he did "not wish at any point to proceed with this Attorney." On the morning of trial, the trial court again admonished Appellant on the charge, punishment range, and *Faretta* warnings. Appellant persisted in his demand to represent himself and repeatedly refused the assistance of appointed counsel throughout voir dire. Appellant requested to approach the bench in the middle of voir dire and ultimately acknowledged that he understood the charge against him, the potential range of punishment, and his obligation to comply with the rules of evidence and procedure.

The record demonstrates a consistent and deliberate effort by Appellant to exercise his right of self-representation. *See Burgess v. State*, 816 S.W.2d 424, 429 (Tex. Crim. App. 1991). The trial court repeatedly warned Appellant about the disadvantages of proceeding without counsel, and Appellant nevertheless persisted in his request. *See Faretta*, 422 U.S. at 835; *Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997) (holding pro se defendant was properly advised of dangers and disadvantages of self-representation where trial court "explained to him that

10

there were technical rules of evidence and procedure that applied at trial, that he would not be granted any special consideration with respect to those rules, and that as a result he might be disadvantaged both at trial and in any appeal that might follow"). Any proclaimed confusion and periodic deflection during his admonishment exchanges with the trial court appear to be part and parcel of his sovereign-citizen defense. *See Royal*, 703 S.W.3d at 918 (citing *United States v. Jones*, 65 F.4th 926, 930–31 (7th Cir. 2023) (The appellant argued "that his legal theories were so outlandish . . . that he could not have knowingly and voluntarily waived his right to counsel. Not so, in our view.")); *see also Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) (observing that if repeated disruptive and recalcitrant conduct "were probative of incompetence, one could effectively avoid criminal justice through immature behavior").

Moreover, Appellant's conduct prior to trial and during trial supports the trial court's determination that he was competent to make his choice. Before trial, Appellant submitted several handwritten pro se motions, making known his literacy and general understanding of various legal principles and procedures. *See Royal*, 703 S.W.3d at 919 (By submitting several handwritten, pretrial, pro se motions, the appellant made clear his literacy and general understanding of applicable legal principles.). At trial, Appellant conducted voir dire, cross-examined witnesses, objected to evidence, introduced exhibits, and testified in his own defense. *See id.* (considering the appellant's actions at trial). Although Appellant's filings and trial performance lacked the skill of a trained attorney, neither poor legal strategy nor a misunderstanding of the law establishes incompetency. *See id.* (citing *Lindsey v. State*, 544 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd)); *see also Carter v. State*, No. 02-24-00266-CR, 2025 WL 2088277, at *10 (Tex. App.—Fort Worth July 24, 2025, pet. ref'd) (mem. op., not designated for publication) (acknowledging that if an accused's right to self-representation cannot be denied

where he clearly and unequivocally declares he wants to represent himself, the record affirmatively demonstrates the accused is literate and has sufficient understanding, and the trial court adequately warns the accused under *Faretta*). Nor are Appellant's sovereign-citizen beliefs, however unfounded, evidence that he was incompetent to knowingly and voluntarily waive his right to counsel and invoke his right to proceed pro se, where it is clear that Appellant was informed of his rights multiple times and irrefutably appreciated the adversarial nature of the proceedings and the charge filed against him. *See Royal*, 703 S.W.3d at 919; *see also Huggins v. State*, 674 S.W.3d 538, 549 (Tex. Crim. App. 2023) (providing that a defendant may not use his rights "to manipulate the court").

Viewed in the light most favorable to the trial court's ruling, the record supports the conclusion that Appellant understood the nature of the proceedings, appreciated the consequences of waiving counsel, was competent to effectively choose, and repeatedly chose to represent himself despite multiple warnings from a patient trial court. Accordingly, we cannot say that the trial court acted outside the zone of reasonable disagreement by granting Appellant's request to proceed pro se. *See Chadwick*, 309 S.W.3d at 563; *see also McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984).

We overrule Appellant's first issue.

### III. *Ineffective Assistance of Counsel*

In his second issue, Appellant asserts that his trial attorneys were ineffective in failing to request a competency evaluation.

### A. *Standard of Review and Applicable Law*

We review an ineffective-assistance-of-counsel complaint under the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on a claim of ineffective assistance of counsel, Appellant must satisfy both prongs of the *Strickland* standard: (1) performance and (2) prejudice. *Strickland*, 466 U.S.

12

at 687; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). The failure to succeed on either *Strickland* prong is fatal to a claim of ineffectiveness. *Perez*, 310 S.W.3d at 893.

First, Appellant must show that trial counsel's representation was deficient in that it fell below an objective standard of reasonableness. *Perez*, 310 S.W.3d at 892–93. Second, Appellant must show that trial counsel's deficient performance prejudiced his defense—that is, counsel's errors were so serious as to deprive Appellant of a fair trial and, as a result, there is a reasonable probability that the outcome of his trial would have been different but for counsel's errors. *Id.* at 893; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 687–88). The "reasonable probability" component must rise to the level such that it is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Walker v. State*, 406 S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd) (quoting *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012)).

There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd). To overcome this deferential presumption, a claim of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814; *Walker*, 406 S.W.3d at 593–94. In this regard, we will not inquire into counsel's trial strategy unless no possible basis exists to support such strategy or tactics. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. [Panel Op.] 1981). Thus, in our analysis, we must make every effort to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

13

In most instances, direct appeal is an inadequate means by which to overcome the deferential presumption and show that trial counsel's representation was deficient and lacked tactical or strategic decision-making, because the record is typically undeveloped and will not show the extent of counsel's conduct and alleged failures. *Goodspeed*, 187 S.W.3d at 392; *Mallet v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 813–14. This is especially true when the basis for counsel's trial strategy and decisions do not appear in the record. *Goodspeed*, 187 S.W.3d at 392. In such circumstances, trial counsel should be afforded an opportunity to explain his or her actions before being denounced as ineffective. *Id.*; *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

The record contains no motion for new trial, transcript of hearing thereon, or direct evidence of the trial attorneys' reasons or explanations for the challenged conduct, so their assistance must be reviewed with great deference and without resort to hindsight, and we will assume that the attorneys "had a [valid] strategy if any reasonably sound strategic motivation can be imagined." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). We will not speculate about the attorneys' motives or strategy in the face of a silent record. *Thompson*, 9 S.W.3d at 814. Therefore, if the record is silent as to any reason or explanation for the attorneys' actions, strategies, or alleged failures, as it is in this case, we "will not conclude [that] the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see also State v. Morales*, 253 S.W.3d 686, 696–97 (Tex. Crim. App. 2008); *Goodspeed*, 187 S.W.3d at 392; *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) (The defendant must show that there was no plausible, professional reason for counsel's specific acts or omissions.).

As an initial matter, we note that a defendant is presumed to be competent to stand trial and shall be found competent to stand trial unless it is otherwise proved

by a preponderance of the evidence that he is incompetent. TEX CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2018). A trial court employs a two-step procedure for making competency determinations: (1) an informal inquiry; and (2) a formal competency trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). The trial court must conduct an informal inquiry upon any "suggestion" from any credible source that the defendant may be incompetent. *Id.*; *see* CRIM. PROC. art. 46B.004(a), (c), (c-1).

B. *Analysis*

The record does not support Appellant's contention that his court-appointed trial attorneys were deficient in failing to request a competency evaluation. *See Perez*, 310 S.W.3d at 892–93. Although Appellant did not file a posttrial motion for new trial asserting an ineffective-assistance-of-counsel claim, Appellant did file two pretrial motions alleging ineffective assistance. In his first filing, Appellant argued summarily that his second attorney had "not put forth said efforts to show cause of action to the court, a good faith effort to help aid law enforcement." Appellant's second filing, entitled "Motion for 'Ineffective Assistance of Counsel Representation'" alleged his third attorney had failed to file several motions on his behalf, including "motions for dismissal, fast and speedy trial, [and] 2 term rule." Notably, neither filing raised competency concerns, nor did Appellant suggest that he was unable to understand the proceedings. No ruling was ever obtained on Appellant's motions, and the record is otherwise silent regarding the attorneys' reasons for not pursuing a competency inquiry. Therefore, the pretrial filings do not change the silent record as to the attorneys' strategies; instead, we are left with the strong presumption that the attorneys' conduct fell within the wide range of reasonable professional assistance. *See Goodspeed*, 187 S.W.3d at 392; *Rylander*, 101 S.W.3d at 110–11.

15

Additionally, nothing in the record would have required the attorneys to seek a competency evaluation. Although Appellant occasionally equivocated regarding his understanding of proceedings, such conduct does not establish incompetency. *Royal*, 703 S.W.3d at 917–20; *see also Alhadad v. State*, No. 02-22-00201-CR, 2023 WL 4940621, at *1–2, 11 (Tex. App.—Fort Worth Aug. 3, 2023, pet. ref'd) (mem. op., not designated for publication) (upholding the trial court's competency determination despite the defendant's erratic and disruptive courtroom behavior, and professed lack of understanding of the pending charges). To the contrary, the record reflects that Appellant was more than once informed of his rights to proceed without benefit of counsel and expressed that he understood that he was waiving this right via a signed written admonishment. The record further indicates that this was not Appellant's first encounter with the criminal justice system, as he had previously been convicted of felonies. *See Royal*, 703 S.W.3d at 916 (considering the appellant's prior criminal history in its analysis of appellant's demonstrated competency to stand trial).

Moreover, Appellant actively and meaningfully participated in his defense, evidencing his understanding of the adversarial nature of the proceedings. *See id.* As previously described, Appellant properly addressed jurors during voir dire, asserted various objections throughout trial, cross-examined witnesses, introduced exhibits, and testified on his own behalf. Any irrelevant statements or attempts to inject inadmissible evidence in advancement of meritless sovereign-citizen theories do not evince a lack of understanding, or an inability to communicate or function rationally. *See id.* at 917. Rather, Appellant's obstinacy had all the appearance of a considered legal tactic fueled by sovereign-citizen ideology, not by any genuine or legitimate mental illness or disability for which there is no evidence. *See id.* at 917–20; *Lindsey*, 544 S.W.3d at 24 ("Lack of legal skill or mediocre legal strategy does not show a defendant is incompetent to stand trial."); *see also DeWitt v. State*,

16

No. 05-12-00583-CR, 2013 WL 3389055, at \*2 (Tex. App.—Dallas July 3, 2013, no pet.) (mem. op., not designated for publication) (noting that "a failure to consult with counsel does not demonstrate a lack of competence; instead, a defendant must be *unable* to consult with counsel").

On this record, we cannot conclude that his trial attorneys rendered ineffective assistance by not requesting a competency evaluation. *See Afeef v. State*, No. 05-22-00838-CR, 2023 WL 5286176, at \*2 (Tex. App.—Dallas Aug. 17, 2023, pet. ref'd) (mem. op., not designated for publication). Accordingly, we conclude that Appellant has failed to overcome the presumption of reasonable professional assistance or the presumption of competency to stand trial and has not established that his attorneys were deficient in failing to pursue a competency evaluation. *See Perez*, 310 S.W.3d at 892–93. We overrule Appellant's second issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


July 23, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

17